IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| THOMAS SCHELL and CHRISTOPHER RILEY, on behalf of themselves and all others similarly situated, | CIVIL ACTION |
| Plaintiffs, | Case No. |
| v. | |
| THE KROGER COMPANY d/b/a KROGER, | JURY TRIAL DEMANDED |
| Defendant. | |

**COLLECTIVE ACTION COMPLAINT**

Plaintiffs, Thomas Schell ("Schell") and Christopher Riley ("Riley") (collectively, "Plaintiffs"), file this Collective Action Complaint against Defendant, The Kroger Company ("Defendant" or "Kroger"), seeking all available relief under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), on behalf of themselves and all current and former Assistant Store Managers ("ASMs"), however variously titled,[1] who work (or worked) at any "Kroger" supermarket in the United States during the relevant time period. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

**NATURE OF THE ACTION**

1. Plaintiffs bring this action on behalf of themselves and similarly situated current and former ASMs to recover unpaid overtime pursuant to the FLSA. Defendant violated the

---

[1] Assistant Store Managers may also be referred to as Assistant Store Leaders. Plaintiffs use those terms interchangeably when referring to Assistant Store Managers, or ASMs, in this Collective Action Complaint.

1

FLSA by failing to pay its ASMs, including Plaintiffs, overtime compensation for the hours they worked over forty (40) in one or more workweeks because Defendant classified them as exempt from overtime.

2. Defendant employs ASMs in over 1,200 Kroger locations in at least 15 states, Alabama, Arkansas, Georgia, Indiana, Kentucky, Louisiana, Michigan, Mississippi, Missouri, Ohio, South Carolina, Tennessee, Texas, Virginia, and West Virginia. "Kroger" stores are retail supermarkets which offer groceries and other goods to the general public.

3. Although Defendant considers its ASMs to be "managers," ASMs are not responsible for true management functions. To the contrary, ASMs spend the vast majority of their time performing the same duties as non-exempt employees, including helping customers, working the cash register, moving products, stocking shelves, setting and resetting displays, counting inventory, cleaning the store, and otherwise standing in as cashiers, stockers, or other hourly workers.

4. ASMs report to Store Managers who, in turn, report to district and other supervisory personnel. Store Managers are the highest level of management in Kroger's stores.

5. As alleged herein, Plaintiffs and all other similarly situated ASMs were required to work more than forty (40) hours in a workweek while employed by Defendant in order to complete their job duties. However, in accordance with Defendant's policy, pattern, and/or practice, they were misclassified as exempt from overtime compensation and were not paid at the mandated rate of time-and-one-half for all hours worked in excess of forty (40) in a workweek.

6. Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring this action on behalf of themselves and all persons who are or were formerly employed by Defendant in the United States during the relevant time period as ASMs, and individuals holding comparable salaried

positions with different titles (the "ASM Collective").

7. Defendant's systematic failure and refusal to pay Plaintiffs and all other similarly situated ASMs for all hours worked over forty (40) in a workweek violates the FLSA.

## THE PARTIES

*Plaintiff Thomas Schell*

8. Schell resides in Tipp City, Ohio. Between approximately January 2018 and December 2020, Schell was employed by Defendant as an ASM at several Kroger stores in and around Dayton, Ohio.

9. Throughout his employment as an ASM with Defendant, Schell was paid a salary and did not receive overtime compensation for working more than forty (40) hours in a work week.

10. As an ASM, Schell was scheduled to work at least five 10-hour shifts each week (with a 60-minute lunch break each shift), though he worked more and rarely took an uninterrupted lunch break. On average, during each week of his employment as an ASM with Defendant, Schell worked approximately 50-60 hours (and sometimes more), including during the weeks leading up to, during, and after Easter, July 4th, Thanksgiving and Christmas in 2017, 2018, 2019, and 2020.

11. Schell spent the vast majority of his time performing the same duties as non-exempt employees, including helping customers, working the cash register, moving products, stocking shelves, setting and resetting displays, counting inventory, cleaning the store, and otherwise standing in as a cashier, stocker, or other hourly worker.

12. The work Schell performed was at the direction, and for the benefit, of Defendant.

13. Pursuant to Defendant's policy, pattern or practice of classifying ASMs as exempt

3

from overtime, Schell was not paid premium overtime compensation for all hours worked over forty (40) in a work week.

14. Schell has consented to join this action. *See* Exhibit A.

*Plaintiff Christopher Riley*

15. Riley resides in Albany, Ohio. Between approximately April 2018 and July 2020, Riley was employed by Defendant as an ASM at several Kroger stores around Columbus, Ohio.

16. Throughout his employment as an ASM with Defendant, Riley was paid a salary and did not receive overtime compensation for working more than forty (40) hours in a work week.

17. As an ASM, Riley was scheduled to work at least five 10-hour shifts each week (with a 60-minute lunch break each shift), though he worked more and rarely took an uninterrupted lunch break. On average, during each week of his employment as an ASM with Defendant, Riley worked approximately 55-60 hours (and sometimes more), including during the weeks leading up to, during, and after Easter, July 4th, and Thanksgiving in 2018 and 2019.

18. Riley spent the vast majority of his time performing the same duties as non-exempt employees, including helping customers, working the cash register, moving products, stocking shelves, setting and resetting displays, counting inventory, cleaning the store, and otherwise standing in as a cashier, stocker, or other hourly worker.

19. The work Riley performed was at the direction, and for the benefit, of Defendant.

20. Pursuant to Defendant's policy, pattern or practice of classifying ASMs as exempt from overtime, Riley was not paid premium overtime compensation for all hours worked over forty (40) in a work week.

21. Riley has consented to join this action. *See* Exhibit B.

*Defendant The Kroger Company*

22. The Kroger Company is an Ohio corporation with its principal place of business located at 1014 Vine Street, Cincinnati, Ohio 45202.

23. Kroger owns and operates, directly and/or through its wholly owned subsidiaries, over 1,200 "Kroger" branded stores in at least 15 states, including Ohio.

24. At all relevant times, Kroger employed or acted in the interest of an employer towards Plaintiffs and other similarly situated current and former ASMs and, among other things, maintained control, oversight and direction over Plaintiffs and other ASMs, including with respect to timekeeping, payroll and other employment practices that applied to them.

25. Kroger applies the same employment policies, practices, and procedures to all ASMs, regardless of the location of the store in which they work.

26. Kroger is a covered employer within the meaning of the FLSA because, among other things, it employs individuals, including Plaintiffs, who are engaged in interstate commerce or in the production of goods for interstate commerce or engaged in handling, receiving, selling, or otherwise working on goods or material that have been moved in or produced for interstate commerce.

27. At all relevant time, Kroger has had gross revenues exceeding $500,000.00.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1332, 1337, and 29 U.S.C. § 216(b).

29. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

30. Defendant is subject to personal jurisdiction in Ohio.

5

31. Defendant purposely availed itself of jurisdiction by operating its business, including more than 200 "Kroger" supermarkets, in Ohio.

32. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to the claims in this Collective Action Complaint occurred within this District and because Plaintiffs and Defendant reside in this District.

## GENERAL FACTUAL ALLEGATIONS

33. Kroger is a publicly traded corporation, with its corporate headquarters located in Cincinatti, Ohio.

34. Upon information and belief, Kroger's store operations are directed and controlled by individuals based out of Kroger's corporate headquarters.

35. According to its 2019 annual report, Kroger is "one of the world's largest retailers, as measured by revenue, operating 2,757 supermarkets under a variety of local banner names in 35 states and the District of Columbia."[2]

36. According to the company's "2019 Fact Book," Kroger owns and operates over 1,200 "Kroger" stores in at least 15 states, Alabama, Arkansas, Georgia, Indiana, Kentucky, Louisiana, Michigan, Mississippi, Missouri, Ohio, South Carolina, Tennessee, Texas, Virginia, and West Virginia.[3]

---

[2] *See* http://s1.q4cdn.com/137099145/files/doc_financials/2019/ar/2019-Annual-Report.pdf, at 18 (last accessed February 4, 2021).
[3] *See* http://s1.q4cdn.com/137099145/files/doc_downloads/irw/fact_books/2019-Fact-Book.pdf, at 56-57 (last accessed February 4, 2021).

6

37. As of February 1, 2020, Kroger "employed approximately 435,000 full- and part-time employees," of which several thousand are believed to be ASMs who work, or worked, at Defendant's "Kroger" branded stores.[4]

38. Defendant maintains strict control, oversight, and discretion over the operation of its stores, including its employment practices with respect to Plaintiffs and the members of the putative ASM Collective.

39. Plaintiffs' and the members of the putative ASM Collective's work was performed in the normal course of Defendant's business and was integrated into it.

40. Consistent with Defendant's policy, pattern and/or practice, Plaintiffs and the members of the putative ASM Collective worked in excess of forty (40) hours per workweek without being paid overtime compensation. For example, and upon information and belief, ASMs are scheduled to work at least five 10-hour shifts each week, totaling fifty (50) hours (with a 60-minute lunch break each shift). However, ASMs routinely work more hours and are rarely able to take an uninterrupted 60-minute lunch break.

41. Upon information and belief, Defendant established labor budgets to cover labor costs for the stores in which Plaintiffs and the members of the putative ASM Collective worked. However, Defendant did not provide sufficient money in the labor budgets to cover all hours needed to complete the necessary non-exempt tasks in each store.

42. Defendant knew or recklessly disregarded the fact that their underfunding of store labor budgets resulted in Plaintiffs and the members of the putative ASM Collective (who were not paid overtime) working more than forty (40) hours in a workweek without receiving any overtime compensation. This allowed Defendant to avoid paying additional wages (including overtime) to the non-exempt, store-level employees.

---

[4] *Ibid* 1, at 3.

43. Because Defendant underfunded store labor budgets, which in turn limited the amount of money available to pay non-exempt employees to perform manual and customer service tasks, ASMs were required to – and did – perform these non-exempt tasks.

44. The performance of non-management work was the primary duty of Plaintiffs and the members of the ASM Collective. These primary duties included helping customers, working the cash register, moving products, stocking shelves, setting and resetting displays, counting inventory, cleaning the store, and otherwise standing in as cashiers, stockers, or other hourly workers.

45. Defendant knew, by virtue of the fact that its upper-level management employees (as its authorized agents) actually saw Plaintiffs and the members of the putative ASM Collective primarily perform manual labor and non-exempt duties, that Plaintiffs and other similarly situated ASMs were not performing activities that complied with any FLSA exemption. Inasmuch as Defendant is a substantial corporate entity aware of its obligations under the FLSA, it acted willfully or recklessly in failing to classify Plaintiffs and other similarly situated ASMs as non-exempt employees.

46. All of the work that Plaintiffs and the members of the putative ASM Collective performed has been assigned by Defendant, who is aware of the work they performed. This work required little skill and no capital investment. Nor did it include managerial responsibilities, or the exercise of meaningful independent judgment and discretion.

47. Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant classified all ASMs as exempt from the overtime provisions of the FLSA.

48. The primary job duties of Plaintiffs and the members of the putative ASM Collective did not include hiring, firing, disciplining, or directing the work of other employees.

8

49. The primary job duties of Plaintiffs and the members of the putative ASM Collective did not materially differ from the job duties of non-exempt hourly paid employees.

50. The primary job duties of Plaintiffs and the members of the putative ASM Collective did not include the exercise of meaningful independent discretion with respect to their duties.

51. The primary job duties of Plaintiffs and the members of the putative ASM Collective were manual and/or clerical in nature. The performance of manual and/or clerical labor occupied the majority of the working hours of Plaintiffs and the members of the putative collective.

52. Plaintiffs and the members of the putative ASM Collective are similarly situated in that they have substantially similar job duties and are subject to Kroger's common compensation policies, patterns, and/or practices.

53. Upon information and belief, Defendant did not perform a person-by-person analysis of Plaintiffs' and the members of the putative ASM Collective's job duties when making the decision to classify ASMs as exempt from overtime under the FLSA.

54. Due to the foregoing, Defendant's failure to pay overtime wages for work performed by Plaintiffs and the members of the putative ASM Collective in excess of forty (40) hours per week was willful.

55. The work performed by Plaintiffs and the members of the putative ASM Collective constitutes compensable work time under the FLSA and was not preliminary, postliminary or *de minimis*.

56. Defendant's unlawful conduct has been widespread, repeated, and consistent.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

57. Plaintiffs bring the First Cause of Action, 29 U.S.C. § 216(b), on behalf of themselves and the members of the putative ASM Collective.

58. At all relevant times, Plaintiffs and the members of the putative ASM Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

59. Defendant employed Plaintiffs and the members of the putative ASM Collective and are engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

60. At all relevant times, Plaintiffs and the members of the putative ASM Collective were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

61. Defendant has failed to pay Plaintiffs and the members of the putative ASM Collective overtime compensation to which they are entitled under the FLSA.

62. Defendant has failed to keep accurate records of time worked by Plaintiffs and the members of the putative ASM Collective.

63. Defendant is liable under the FLSA for, among other things, failing to properly compensate Plaintiffs and the members of the putative ASM Collective.

64. Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the putative ASM Collective were not paid overtime compensation when they worked beyond forty (40) hours in a workweek.

65. All of the work that Plaintiffs and the members of the putative ASM Collective performed has been assigned by Defendant, and/or Defendant has been aware of such work.

66. As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiffs and the members of the putative ASM Collective. This policy and pattern or practice includes, but is not limited to:

    (a)    willfully failing to pay Plaintiffs and the members of the putative ASM Collective premium overtime wages for hours that they worked in excess of forty (40) hours per workweek;

    (b)    willfully misclassifying Plaintiffs and the members of the putative ASM Collective as exempt from the overtime protections of the FLSA; and

    (c)    willfully failing to record all of the time that its employees, including Plaintiffs and the members of the putative ASM Collective, worked for the benefit of Defendant.

67. Defendant is aware or should have been aware that federal law required it to pay Plaintiffs and the members of the putative ASM Collective overtime compensation for all hours worked in excess of forty (40) in a workweek.

68. Plaintiffs and the members of the putative ASM Collective perform or performed the same primary duties.

69. Defendant's unlawful conduct has been widespread, repeated, and consistent.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act: Unpaid Overtime Wages**
**(Brought on Behalf of Plaintiffs and the ASM Collective)**

70. Plaintiffs reallege and incorporate by reference the above allegations.

71. Defendant has engaged in a widespread policy, pattern or practice of violating 29 U.S.C. § 207 by failing to pay overtime compensation to Plaintiffs and the members of the putative ASM Collective for hours worked above forty (40) in a work week, as detailed in this Collective Action Complaint.

72. Upon information and belief, and as part of their regular business practices, Defendant has intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the putative ASM Collective.

11

73. Defendant's unlawful conduct, as described above, was willful and/or in reckless disregard of the applicable wage and hour laws pursuant to Defendant's centralized, company-wide policy, pattern, and/or practice of attempting to minimize labor costs by violating the FLSA.

74. As further evidence of its willful or reckless failure to classify Plaintiffs and the members of the ASM Collective as non-exempt employees, Defendant has uniformly failed to: (a) accurately track or record actual hours worked by Plaintiffs and the members of the putative ASM Collective; and (b) provide Plaintiffs and the members of the putative ASM Collective with a method to accurately record the hours they actually worked.

75. Defendant did not make a good-faith effort to comply with the FLSA with respect to their timekeeping and compensation of Plaintiffs and the members of the putative ASM Collective.

76. Defendant was or should have been aware that the FLSA required it to pay employees performing non-exempt duties an overtime premium for hours worked in excess of forty (40) per week.

77. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the members of the putative ASM Collective for all hours worked in excess of forty (40) in a workweek.

78. Upon information and belief, there are potentially hundreds of similarly situated current and former ASMs who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the members of the putative ASM Collective, pursuant to 29 U.S.C. § 216(b).

79. The members of the putative ASM Collective are known to Defendant, are readily identifiable, and can be located through Defendant's records.

80. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255, as it may be further extended or tolled by agreement, equity or operation of law.

81. As a result of Defendant's willful violations of the FLSA, Plaintiffs and the members of the putative ASM Collective have suffered damages by being denied overtime compensation in accordance with the FLSA, in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the members of the putative ASM Collective, prays for the following relief:

1. Designation of this action as an FLSA collective action on behalf of Plaintiffs and the members of the putative ASM Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the ASM Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join forms pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

2. An award of unpaid overtime compensation for all hours worked in excess of forty (40) in a workweek at a rate of time and one-half of the regular rate of pay due under the FLSA using the following common methodology for calculating damages: ((Annual Salary ÷ 52) ÷ 40) x Total Number of Overtime Hours

13

Worked x 1.5;

3. An award of liquidated damages under the FLSA as a result of Defendant's willful failure to pay for all hours worked in excess of forty (40) in a workweek at a rate of time and one-half of the regular rate of pay;

4. An award of damages representing Defendant's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

5. An award of service payments to Plaintiffs;

6. An award of pre-judgment and post-judgment interest;

7. An award of costs and expenses of this action, together with reasonable attorneys' and expert fees to Plaintiffs' counsel pursuant to the FLSA;

8. An injunction requiring Defendant to cease its practice of violating the FLSA in the future;

9. Issuance of a declaratory judgment that the practices complained of in this Collective Action Complaint are unlawful and/or willful under the FLSA; and

10. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Collective Action Complaint.

Dated: February 9th, 2021

/s/ Bruce H. Meizlish
Bruce Meizlish (OH Id. No. 0033361)
Deborah Grayson (OH Id. No. 006277)
**MEIZLISH & GRAYSON**
119 E. Court Street, Suite 409
Cincinnati, Ohio 45202
Phone: (513) 345-4700
Facsimile: (513) 345-4703
brucelaw@fuse.net
drgrayson@fuse.net

Jason Conway (PA 317113)*
**CONWAY LEGAL, LLC**
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 278-4782
Fax: (215) 278-4807
jconway@conwaylegalpa.com

*Attorneys for Plaintiffs and the Putative ASM Collective*

*\* To be admitted pro hac vice*