**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| THOMAS SCHELL and CHRISTOPHER RILEY, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 1:21-cv-00103-MRB |
| v. | |
| THE KROGER COMPANY d/b/a KROGER, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

I.     FACTUAL BACKGROUND ................................................................ 4

     A.    The Parties ................................................................................. 4

     B.    Kroger's ASM's Are Similarly Situated in All Relevant Respects ........... 6

         1.    ASMs Perform Substantially the Same Duties .............................. 6

         2.    ASMs Undertake the Same Uniform Training .............................. 7

         3.    ASMs Are Paid on a Salary Basis and Are Eligible for the Same Annual Bonus and Benefits ........................................... 7

         4.    ASMs Are Required to Work Overtime and Do Not Record Their Time ....................................................................... 8

         5.    ASMs Are Uniformly Classified as Exempt................................. 8

         6.    ASMs Are Subject to the Same Job Description and Postings ....... 9

         7.    ASMs Are Subject to the Same Corporate Policies and Procedures .................................................................... 9

II.    LEGAL STANDARD FOR CONDITIONAL CERTIFICATION ..................... 10

     A.    Conditional Certification Under the FLSA .............................. 12

     B.    Plaintiffs' Burden is Minimal at the Notice Stage ................... 12

     C.    Plaintiffs Have More Than Satisfied Their Lenient Burden and Notice Should Issue to the ASM Collective. ............................ 15

     D.    Merits Issues Are Not Considered at the Notice Stage ............ 16

III.   NOTICE SHOULD BE SENT TO THE ASM COLLECTIVE .................... 17

IV.   CONCLUSION ................................................................................. 20

## INTRODUCTION

This action seeks the recovery of unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, on behalf of Plaintiffs, Thomas Schell and Christopher Riley, and a putative collective comprising Assistant Store Managers ("ASMs") who worked for Defendant, The Kroger Company d/b/a Kroger ("Kroger" or "Defendant"), in approximately 700 *additional* "Kroger" branded stores across the United States.[1] Together with *Mullins v. The Kroger Co., et al.*, No. 1:19-cv-964 (S.D. Ohio) ("*Mullins*"), *Wilson v. The Kroger Co., et al.*, No. 1:20-cv-936 (S.D. Ohio) ("*Wilson*"), *Powell v. The Kroger Co., et al.*, No. 1:21-cv-345 (S.D. Ohio) ("*Powell*"), *Levi v. The Kroger Co., et al.*, No. 1:21-cv-42 (S.D. Ohio) ("*Levi*"), and *Lovendahll. v. The Kroger Co. and Smith's Food & Drug Centers, Inc. d/b/a Smith's Food & Drug*, No. 1:21-cv-350 (S.D. Ohio) ("*Lovendahl*"),[2] this is the largest action over which this Court is presiding which asserts claims that Kroger's ASMs were misclassified as exempt employees and unlawfully deprived of overtime compensation for hours worked above forty (40) in a workweek.

Finding Kroger's ASMs to be similarly situated for purposes of the first stage of the FLSA's collective action process, this Court previously conditionally certified a collective action comprising individuals who worked at more than 120 of Kroger's "Fry's Food" branded stores. *See Mullins*, Doc. 30.[3] That decision was followed by conditional certification of an FLSA collective comprising ASMs who worked at more than 150 "King Soopers/City Market" branded

---

[1] Kroger previously agreed to stipulate to conditional certification as to the five divisions for whom an existing opt-in (as of May 13, 2021) had worked. *Schell*, Doc. 15, at 1. Since then, consents have been filed by ASMs who worked at the remaining six divisions and the plaintiffs are (today) moving for conditional certification as to those divisions.

[2] The plaintiff in *Lovendahl* is contemporaneously moving for conditional certification of his FLSA claims on behalf of ASMs who worked in Kroger's "Smith's Food & Drug" branded stores.

stores in *Powell*. *See Powell*, Docs. 43, 46.[4] **While previously opposing conditional certification, Kroger recently conceded that it is eminently appropriate, and agreed to stipulate to conditional certification of the FLSA claims of ASMs who worked at approximately 500 "Kroger" branded stores spanning five of its eleven divisions: Atlanta, Columbus, Cincinnati, Memphis (Delta), and Nashville divisions at any time between April 10, 2018 and June 9, 2021. Doc. 15.** Kroger also agreed to stipulate to conditional certification of the claims of ASMs who worked in over 130 "Fred Meyer" branded stores in *Levi* (*Levi*, Doc. 15), and more than 100 "Pick 'n Save" branded stores in *Wilson* (*Wilson*, Doc. 17).[5] Combined, nearly 1,400 ASMs have opted-in to *Mullins*, *Wilson*, *Powell*, *Levi*, and *Schell*.

This action seeks to conditionally certify the claims of the ASMs who worked in nearly 700 stores in the remaining six "Kroger" branded divisions: Central (Indianapolis), Michigan, Louisville, Dallas, Houston and Mid-Atlantic (Roanoke). Plaintiffs, Thomas Schell and Christopher Riley, and Opt-Ins, Sharif Albarkat, Ronnie Banks, Mitchell Gordon, Jonathan Holmes, Rashad Myers, Olivia Strehle, and Gabriel Trejo (collectively, "Plaintiffs"), have uniformly alleged that Defendant failed to pay them and all other similarly situated ASMs overtime compensation in accordance with the FLSA. *See generally* Collective Action Complaint ("Complaint"), Doc. 1; Notice of Filing Consent To Join Forms, Docs. 41. As in *Mullins*, *Wilson*, *Powell*, *Levi*, and *Lovendahl*, Plaintiffs allege that they were improperly classified as exempt and denied overtime compensation for all hours worked above forty (40) in

---

[3] More than 130 ASMs joined (or "opted-in") to *Mullins*.

[4] Approximately 155 individuals have opted-in to *Powell*.

[5] In stipulating to conditional certification and the distribution of notice to the members of the respective collectives, Kroger acknowledged that doing so would "conserve the Parties' and the Court's time and resources." Accordingly, and in response to receiving notice, more than 860 ASMs opted-in to *Schell*. more than 140 ASMs opted-in to *Levi*, and approximately 91 ASMs opted-in to *Wilson*.

a work week. Doc. 1, at ¶¶1, 5, 9, 13, 16, 20, 40, 42, 47, 49, 52, 54, 61; *see* Section I.B, *infra*. Defendant's violations were deliberate, and its exemption policy was uniformly applied to reduce store labor costs. *Id.*, at ¶73. Notwithstanding the weight of authority supporting conditional certification, as well as Defendant's prior agreements – both in this action and two others[6] – to stipulate to conditional certification, Defendant has refused to do so here.[7]

Accordingly, based on the allegations in the Complaint, the written declarations of the seven Plaintiffs (representing the remaining six "Kroger" branded divisions for whom notice was not previously sent), and Defendant's uniform job postings and corporately derived documents,

---

[6] In several analogous cases involving claims that Kroger misclassified salaried managers as exempt, sister courts have not hesitated to grant conditionally certification. *See Hardesty v. Kroger Co.*, No. 1:16-cv-298, 2018 U.S. Dist. LEXIS 93866, (S.D. Ohio July 19, 2016) (granting conditional certification on behalf of exempt "recruiters"); *Haugen v. Roundy's Ill., Co.*, No. 18 C 7297, 2019 U.S. Dist. LEXIS 232406 (N.D. Ill. Dec. 13, 2019) (granting conditional certification on behalf of exempt "People Service Managers"); and *Kujat v. Roundy's Supermarkets, Inc*., No. 18 C 5326, 2019 U.S. Dist. LEXIS 74149 (N.D. Ill. May 2, 2019) (conditionally certifying unpaid overtime claims on behalf of exempt "Replenishment Managers" and "Bench Replenishment Managers"). Indeed, such is the uniformity of Kroger's practices and the work performed by their assistant managers that even applying the more stringent test for stage two certification – typically predicated by a defendant's motion for "decertification" of the conditionally certified collective – courts have not hesitated to grant final certification for purposes of proceeding collectively to trial. *See e.g.*, *Hardesty v. Kroger Co.*, No. 1:16-cv-298, 2018 U.S. Dist. LEXIS 167327, *15-16 (Sep. 28, 2018) (denying the defendant's motion for decertification and finding that, among other things, the plaintiff's claims were unified by a common theory – *i.e.*, "Kroger's classification decision violated the FLSA" – that they performed the same primary non-management duties, and have "similar job descriptions and training[.]"). In fact, demonstrating that unpaid overtime claims are eminently appropriate for collective determination, this Court denied the defendant's attempts to decertify, under the more rigorous Rule 23 class certification standard, two subclasses of account executives and account executive trainees. *See Hendricks v. Total Quality Logistics*, No. 1:10CV649, 2019 U.S. Dist. LEXIS 96940, *47-48 (S.D. Ohio, Mar. 22, 2019) (Barrett, *J.*).

[7] The parties met and conferred to discuss agreeing to stipulate to conditional certification and Defendant refused to do so. Defendant did not explain their decision, nor did it articulate a single reason as to why this action is any different from the 5 in which conditional certification was granted or agreed to by Defendant, or why the six divisions for which Plaintiffs are moving for conditional certification are any different to the five for which notice has already been sent to Defendant's ASMs.

the Court should, respectfully and is it did in *Mullins* and as the parties previously stipulated in this action, grant conditional certification of the following collective:

> All current and former "Assistant Store Managers"[8] who worked for Kroger in its Central (Indianapolis), Michigan, Louisville, Dallas, Houston and Mid-Atlantic (Roanoke) at any time on or after October 8, 2018 to the present, and who were classified as exempt from overtime compensation (the "ASM Collective").

Taken together, Plaintiffs have exceeded their lenient burden of showing that they are similarly situated to ASMs who worked in the six remaining "Kroger" branded divisions. As demonstrated below, ASMs: (1) are uniformly classified as exempt from overtime and paid a salary; (2) are subject to Defendant'' uniform store policies and procedures; (3) perform substantially the same job duties; (4) complete the same training using the same materials; (5) receive the same bonuses and entitlements; (6) work more than forty (40) hours a week but are not paid overtime compensation; and (7) are together the victims of a single policy, practice, or plan that violated the FLSA (*i.e.*, to misclassify ASMs as exempt in order to reduce store labor costs). Defendant's policy, practice, or plan applied regardless of the location of the store where the ASM's work, the length of their employment, their supervisor, or any other relevant factor. Plaintiffs easily satisfy the lenient standard applicable at this first-stage of the two-step conditional certification process.

## I.    FACTUAL BACKGROUND

### A.    The Parties

***The Kroger Company***

"Kroger" stores are owned and operated by The Kroger Company d/b/a Kroger. Doc. 1, at ¶¶2, 22-23. Kroger is an Ohio corporation with its principal place of business in Cincinnati,

Ohio. *Id*, at ¶22. There are nearly 700 "Kroger" branded stores in the Central (Indianapolis), Michigan, Louisville, Dallas, Houston and Mid-Atlantic (Roanoke) divisions. *See* https://s1.q4cdn.com/137099145/files/doc_downloads/irw/fact_books/2020/KRO_FactBook2020 _FINAL.pdf, at 67 (last accessed October 8, 2021). As of January 30, 2020, Kroger employed more than 465,000 people across the United States, of which several thousand are believed to be ASMs in the above divisions. Doc. 1, at ¶37.

### *Plaintiffs*

Thomas Schell worked as an ASM for Kroger between January 2017 and December 2020 at four Kroger stores located in Ohio, as part of Kroger's Cincinnati division. *See* Ex. G, Declaration of Thomas Schell, at ¶¶1, 3.[9] Christopher Riley worked as an ASM at four stores located in Ohio, as part of Kroger's Columbus division. *See* Ex. H, Declaration of Christopher Riley, at ¶¶1, 3. Olivia Strehle worked for Kroger as an ASM between approximately March 2018 and July 2019 at a store located in Kentucky, as part of Kroger's Louisville division. *See* Ex. I, Declaration of Olivia Strehle, at ¶¶1, 3. Ronnie Banks, Jr. worked as an ASM in Kroger's Indiana (or Central) division, at a store located in Fort Wayne, Indiana between approximately April 2018 and July 2019. *See* Ex. J, Declaration of Ronnie Banks, at ¶¶1, 3. Sharif Albarkat worked for Kroger as an ASM between approximately January 2015 and May 2019 at stores located in Ann Arbor, as part of Kroger's Michigan division. *See* Ex. K, Sharif Albarkat, at ¶¶1, 3.[10] Jonathan Holmes spent more than five years working in Kroger's Dallas division – between July 2015 and November 2020 – as an ASM in a store located in Fort Worth. *See* Ex. L, Declaration of Jonathan Holmes, at ¶¶1, 3. Rashad Myers worked for Kroger as an ASM

---

[8] This also includes individuals employed as "Assistant Store Leaders" ("ASLs"). As explained below, Kroger recently transitioned from three ASM positions in its store to two ASL positions.
[9] All references to "Ex." are to the exhibits attached to the Declaration of Jason Conway.

between approximately March 2016 and February 2019 at three stores located in Louisville, Kentucky, as part of Kroger's Louisville division. *See* Ex. M, Declaration of Rashad Myers, at ¶¶2, 4.

Collectively, Plaintiffs worked at multiple stores in several different states, including across Defendant's Cincinnati, Columbus, Central (Indianapolis), Michigan, Louisville, and Dallas divisions. Plaintiffs' experiences demonstrate that ASMs are similarly situated for purposes of conditional certification (regardless of the Kroger division in which they worked).

**B.    Kroger's ASM's Are Similarly Situated in All Relevant Respects**

**1.    ASMs Perform Substantially the Same Duties.**

ASMs' primary duties include helping customers, working the cash register, moving products, stocking shelves, setting and resetting displays, counting inventory, cleaning the store, and otherwise standing in as cashiers, stockers, or other hourly workers. Doc No. 1, at ¶¶3, 11, 18, 44; Exs. H-, at ¶¶7, 13. These duties comprise approximately 80-90% of the work time of ASMs.  Doc. 1, at ¶¶3, 11, 18, 51; Exs. H-, at ¶13. ASMs' primary duties do not involve hiring, firing, disciplining, promoting, setting rates of pay for, and managing employees.  Doc. 1 at ¶48; Exs. H-, at ¶15.  Rather, the Store Manager (to whom ASMs report) is responsible for personnel matters, including firing, disciplining, promoting and managing store employees and, even then, they have to consult with their supervisor about these matters. Exs. H-, at ¶15. *See Mullins*, Doc. 30, at PAGEID #1505-1506 (granting conditional certification where the plaintiffs performed the same primary duties as those here which compromised approximately 90% of their time at work); *see also Powell*, Doc. 43, at 5-6 (finding the plaintiff's allegations that they performed the same work as hourly employees, including "helping customers, moving freight, stocking shelves,

---

[10] Plaintiff intends to shortly submit additional declarations from opt-ins who have worked in, among other things, Kroger's Mid-Atlantic and Houston divisions.

building displays, counting inventory, cleaning the store, and otherwise standing in as cashiers or stockers" to be "sufficient to meet the lenient burden at the conditional certification stage.").

### (2) ASMs Undertake the Same Uniform Training.

All new ASMs undergo the same 12-week corporate training called "Leadership Essentials" (formerly referred to as "MD-1"). Exs. H-, at ¶2; Ex. A (offer letter confirming that, prior to promotion to a salaried ASM role, employees are required to complete Kroger's mandatory manager training); Ex. B (outlining training common to ASMs). To facilitate training, Defendant provides all ASMs with uniform training materials which cover the role of the ASM position, including with respect to operations, merchandising and human resources, as well as Defendant's store policies and procedures. Exs. H-, at ¶2. These training materials apply to all ASMs, regardless of the location where they are ultimately assigned to work. *Id*. *See Mullins*, Doc. 30, at PAGEID #1505 (granting conditional certification where ASMs were trained using the same materials, underwent the same 12-week corporate training program, and were provided with uniform training materials); *see also Powell*, Doc. 43, at 5-6 (granting conditional certification where, among other things, the allegations in the complaint and the plaintiffs' declarations established that ASMs were subject to the same training).

### (3) ASMs Are Paid on a Salary Basis and Are Eligible for the Same Annual Bonus and Benefits.

Kroger pays ASMs a salary and no overtime compensation, regardless of the number of hours they work each week. Doc. 1, at ¶¶1, 5, 9, 13, 16, 20, 40-42, 47, 61, 64; Exs. H-, at ¶8, 10-11 *see also* Ex. A (confirming that, post-training, ASMs receive a salary plus additional benefits). In addition, ASMs are eligible for an annual bonus each year based, as well as health insurance, vacation days, and 401(k). Exs. H-, at ¶10; Ex. A. *See Mullins*, Doc. 30, at PAGEID

#1506 (granting conditional certification where ASMs were paid on a salary basis regarding of the number of hours they worked each week); *see also Powell*, Doc. 43, at 5-6 (same).

### (4)    ASMs Are Required to Work Overtime and Do Not Record Their Time.

ASMs are scheduled to work five 10-hour shifts each week (with a 30 to 60-minute lunch break) for a minimum of forty-five (45) work hours.  Doc. 1, at ¶10, 17, 40; Exs. H-, at ¶5. Because Kroger's stores are busy and understaffed, ASMs work longer hours, including through lunch. Doc. 1, at ¶40; Exs. H-, at ¶5. Defendant also sets strict labor budget goals for their stores which means that to meet them ASMs must perform additional manual labor because overtime is rarely approved for the hourly-paid employees. Doc. 1, at ¶¶41-43; Exs. H-, at ¶8. As a result, on average ASMs work between fifty (50) hours (at the lower end) to sixty-five (65) hours or more (at the higher end) each week. Exs. H-, at ¶6. ASMs are also uniformly not required to record the hours they work each week. Exs. H-, at ¶9. *See Mullins*, Doc. 30, at PAGEID #1506 (granting conditional certification where ASMs were required to work overtime were not required to record their time); *see also Powell*, Doc. 43, at 3 (same).

### (5)    ASMs Are Uniformly Classified as Exempt.

Kroger classified Plaintiffs and all salaried ASMs as exempt from overtime pay. Doc. 1, at ¶¶1, 5, 13, 20, 46, 47; *see also* Defendant's Answer, Doc. 14, at ¶1, 5, 9, 13, 20, 47, 53 (admitting that Defendant classified Plaintiffs and its ASMs as exempt from overtime); Exs. H-, at ¶11; Ex. C (job postings confirming that ASMs are classified as exempt). Based upon this classification, Defendant failed to pay any overtime (or other) compensation to ASMs for working more than forty (40) hours in a workweek.  Doc. 1, at ¶¶5, 9, 13, 16, 20, 40, 42, 47, 61; Exs. H-, at ¶¶8, 10-11. *See Mullins*, Doc. 30, at PAGEID #1506 (granting conditional certification where ASMs were uniformly classified by Kroger as exempt administrative

employees); *see also Powell*, Doc. 43, at 7 ("Plaintiffs have set forth substantial allegations that the putative ASM class members are similarly situated as the victims of King Soopers' common policy, practice, or plan of misclassifying them as exempt and not paying them overtime compensation.").

### (6)     ASMs Are Subject to the Same Job Description and Postings.

Kroger has a uniform job description for the ASM position which is the same regardless of the location of the store in which they work. Exs. H-, at ¶12.[11] In addition, Defendant's job postings for the ASM position are uniform, again regardless of the location of the store in which the posting relates. *See* Ex. C (ASM job postings for stores located in Georgia, Houston, North Carolina, Tennessee, Virginia, and West Virginia). *See Mullins*, Doc. 30, at PAGEID #1505-1505 (granting conditional certification where, as here, Kroger's ASMs were subject to the same job description); *see also Powell*, Doc. 43, at 7 (granting conditional certification where, as here, Kroger's ASMs were subject to the same "job description, [and] job postings …").

### (7)     ASMs Are Subject to the Same Corporate Policies and Procedures.

Defendant maintains strict control, oversight, and direction over the operation of their stores, including with respect to the work performed by ASMs. Doc. 1, at ¶38. ASMs' work is closely controlled by Kroger and Defendant has extensive policies, procedures, and work rules for how ASMs (and other employees) must perform their duties and how stores must operate. ASMs are required to follow Defendant's policies and procedures. Exs. H-, at ¶14. *See also Mullins*, Doc. 30, at PAGEID #1506-1507; *see also Powell*, Doc. 43, at 7 (granting conditional certification where, as here, Kroger's ASMs were subject to the same "employee policies"). ASMs are also subject to Defendant's annual performance evaluation process.  Exs. H-, at ¶15;

---

[11]  In approximately 2012, Defendant divided the ASM position into three separate, but functionally equivalent, roles: ASM-Merchandising, ASM-Operations, and ASM-Human Resources. Each role was filled by a single ASM. In approximately November 2019, the ASM

Ex. D (exemplar performance evaluation identifying the metrics and factors used by Defendant to review all ASMs).

## II.    **LEGAL STANDARD FOR CONDITIONAL CERTIFICATION[12]**

Pursuant to 29 U.S.C. § 216(b), Plaintiffs seek conditional certification and approval to send notice of the lawsuit to all members of the proposed ASM Collective. The overwhelming authority from courts within the Sixth Circuit – including this Court and others within and outside this District – supports conditional collective certification, particularly where employees allege they were misclassified and are attempting to recover unpaid overtime. *See e.g.*, *Mullins*, Doc. 43 (conditionally certifying FLSA collective comprising ASMs who work at Kroger's "Fry's Food" branded alleging they were misclassified as exempt from overtime compensation); *Powell*, Doc. 43 *adopted by* Doc. 46 (conditionally certifying FLSA collective comprising ASMs who work at Kroger's "King Soopers/City Market" branded stores alleging they, too, were misclassified as exempt from overtime compensation); *Adams v. Wenco Ashland, Inc.*, No. 1:19-cv-1544, 2020 U.S. Dist. LEXIS 90856 (S.D. Ohio May 22, 2020) (certifying collective comprising current and former exempt "assistant general managers"); *Kampfer v. Fifth Third Bank*, No. 3:14-cv-2849, 2016 U.S. Dist. LEXIS 37056 (N.D. Ohio March 22, 2016) (granting conditional certification of collective action comprising "customer service managers" who

_____

roles were consolidated into two functionally equivalent positions: Assistant Store Leader-TM, and Assistant Store Leader-HM. In referring to ASMs, Plaintiffs incorporate the ASL positions.

[12] Defendant's decision to stipulate to conditional certification of five of Kroger's eleven divisions and then, for apparently strategic reasons, to oppose conditional certification of the remaining 6 divisions is without merit and the Court should, respectfully, find Defendant is judicially estopped from challenging conditional certification. *See e.g.*, *Walton v. Bayer Corp.*, 643 F.3d 994, 1002-03 (7th Cir. 2011) (explaining that judicial estoppel can be applied to prevent litigants from strategically taking contrary positions at different stages of the same litigation); *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992) ("Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so.").

alleged they were misclassified as exempt and denied overtime compensation); *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759 (N.D. Ohio 2015) (certifying collective comprising current and former "co-managers" who were misclassified as exempt from overtime); *Cox v. Healthcare Servs. Grp.*, No. 3:13-cv-293, 2013 U.S. Dist. LEXIS 78290 (N.D. Ohio June 4, 2013) (granting conditional certification on behalf of exempt "account managers" seeking recovery of unpaid overtime); *Struck v. PNC Bank N.A.*., No. 2:11-cv-00982, 2013 U.S. Dist. LEXIS 19444 (S.D. Ohio Feb. 13, 2013) (certifying collective of exempt "mortgage loan officers"); *Wade v. Werner Trucking Co*., No. 2:10-cv-00270, U.S. Dist. LEXIS 156257 (S.D. Ohio Oct. 31, 2012) and 2011 U.S. Dist. LEXIS 8539 (S.D. Ohio Jan. 28, 2011 (certifying multiple collectives comprising several exempt positions); *Swigart v. Fifth Third Bank*, 276 F.R.D. 210 (S.D. Ohio 2011) (certifying collective comprising current and former "mortgage loan officers"); *see also Levine v. Vitamin Cottage Natural Food Markets, Inc*., No. 20-cv-261-STV, 2020 U.S. Dist. LEXIS 207945, at *2 (D. Colo. No. 6 2020) certifying collective comprising assistant store managers who worked at more than 150 grocery stores in 19 states); *Fitch v. Giant Eagle, Inc*, No. 2:18-cv-01523-RJC, 2020 U.S. Dist. LEXIS 201418, at *16-17 (W.D. Pa., Oct. 20, 2020) (granting conditional certification of four collectives comprising "team leaders" and "senior team leaders," including those in training), *adopted by, obj. overruled by,* 2021 U.S. Dist. LEXIS 33416 (W.D. Pa., Feb. 23, 2021); *Ratcliffe v. Food Lion, LLC*, No. 3:18-cv-01177, 2019 U.S. Dist. LEXIS 202115 (M.D. Tenn. Nov. 20, 2019) (certifying collective comprising assistant store managers who worked at approximately 1,000 stores).

In fact, Kroger is no stranger to FLSA misclassification claims, having been sued in this District by employees alleging that they, like Plaintiff here, were misclassified as exempt and deprived of overtime compensation for working more than 40 hours in a work week. *See*

*Hardesty v. Kroger Co*., No. 1:16-cv-298, 2018 U.S. Dist. LEXIS 167327 (Sep. 28, 2018) (denying the defendant's motion for decertification of the conditionally certified collective comprising exempt classified "CoRE Recruiters" employed by Kroger).

### A.  Conditional Certification Under the FLSA

The FLSA requires that all hours be compensated. *Mullins*, Doc. 30, at PAGEID #1502. Section 216(b) of the Fair Labor Standards Act provides the exclusive means of bringing class-wide claims to redress alleged violations of the FLSA.  *See* 29 U.S.C § 216(b); *Adams*, 2020 U.S. Dist. LEXIS 90856, *6; *Myers v. Marietta Mem. Hosp.*, No. 2:15-cv-2956, 201 F. Supp. 3d 884, at *889 (S.D. Ohio Aug. 17, 2016); *Struck*, 2013 U.S. Dist. LEXIS 19444, *6 (citing *In re HCR ManorCare, Inc*., No. 11-3866, 2011 U.S. App. LEXIS 26241, *1 (6th Cir. Sept. 28, 2011). The FLSA establishes two requirements for a representative "collective" action: (1) the plaintiffs must actually be "similarly situated;" and (2) all plaintiffs must affirmatively consent to participate in the action. *Boyd v. Schwebel Baking Co.*, No. 4:15-CV-871, 2016 U.S. Dist. LEXIS 85378, at *7-8 (citing *Comer v. Wal-Mart Stores, Inc*., 454 F.3d 544, 546 (6th Cir. 2006)); *see also Mullins*, Doc. 30, at PAGEID #1502.

### B.  Plaintiffs' Burden is Minimal at the Notice Stage.

While neither the FLSA nor the Sixth Circuit has defined "similarly situated" (*Mullins*, Doc. 30, at PAGEID#1502), the Sixth Circuit has "implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action."[13] *In re HCR*

---

[13] Plaintiff is mindful of Judge McFarland's recent decision in *Holder v. A&L Home Care & Training Ctr*, No. 1:20-cv-757, 2021 U.S. Dist. LEXIS 145586, at *16 (S.D. Ohio, Aug. 4, 2021) in which the court certified its decision granting conditional FLSA certification for interlocutory review to the Sixth Circuit.  Notwithstanding this, Judge McFarland acknowledged the Sixth Circuit's "apparent approval of certifying FLSA cases in two stages" and that courts in the Sixth Circuit "routinely apply the two-step process in FLSA cases …" *Id*.  Judge McFarland also rejected the defendant's attempt to abandon two-step approach in favor of the Fifth Circuit's

*ManorCare*, 2011 U.S. App. LEXIS 26241, *1 (citing *O'Brien v. Ed. Donnelly Enters., Inc.*, 575 F.3d 567 (6th Cir. 2009) and *Comer*, 454 F.3d at 544)); *Mullins*, Doc 30, at PAGEID# 1502-1503 confirming that, absent discovery on the issue of conditional certification, "courts in the Sixth Circuit typically determine whether plaintiffs are similarly situated in two stages …").[14] First, at the "initial notice" stage, the Court "determine[s] whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members." *Swigart*, 276 F.R.D. at 213; *see also Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d

---

[14] recent decision in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021) which applied a one-step approach. This Court has also recently acknowledged, in conditionally certifying at least one action following Judge McFarland's decision in *Holder*, that "this Court has expressly declined to abandon the two-step process in FLSA cases"). *Gambrell v. Rumpke Trans. Co., LLC.*, 2021 U.S. Dist. LEXIS 186362, at n.1 (S.D. Ohio, Sep. 29, 2021) (Barrett, *J.*) In addition, at least one federal district court, overseeing an analogous FLSA case involving assistant store managers, has rejected the one-step approach endorsed by *Swales*. *Piazza v. New Albertsons, LP*, No. 20-cv-03187, 2021 U.S. Dist. LEXIS 20573, at n.6 (N.D. Ill., Feb. 3, 2017) (distinguishing *Swales* on the basis that because the parties had conducted significant discovery and the issue of conditional certification was intertwined with a threshold merits issue, the merits question should not be deferred until after notice of the collective action was served); *see also Piazza v. New Albertsons*, 2021 U.S. Dist. LEXIS 163417 (N.D. Ill., Aug. 16, 2021) (declining to grant the defendants' request for permission to seek an interlocutory appeal of the court's order granting conditional certification); *In re New Albertsons, Inc.*, 2021 U.S. App. LEXIS 26966, at *5-6 (6th Cir., Sept. 1, 2021) (denying the defendant's writ of mandamus and finding that "the two-step process followed by the district court is widely approved by other circuits and used in many district courts."). Indeed, Kroger has already embraced the two-step approach for determining whether its ASMs are similarly situated under the FLSA. *See Mullins*, Doc. 27, at PAGE ID #1404 (arguing that, in light of the limited discovery conducted by the parties, the court should apply a heightened standard at the conditional certification, or first-stage, of the similarly situated analysis).

[14] Although the Sixth Circuit has declined to "create comprehensive criteria for informing the similarly situated analysis," it has held that FLSA plaintiffs may proceed collectively in cases where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. "Thus, similarly situated class members under [the] FLSA are those whose causes of action accrued in approximately the same manner as those of the named plaintiffs." *Lewis*, 789 F.Supp.2d at 868. Sister courts in this District have emphasized that a named plaintiff "need only show that [his] position [is] similar, not identical, to the positions held by the putative class members." *Heibel*, 2012 U.S. Dist. LEXIS 139510, 2012 WL 4463771 at *3 (quoting *Lewis*, 789 F.Supp.2d at 867-68) (alterations in original).

863, 867 (quoting *Comer*, 454 F.3d at 547). During this preliminary stage, a district court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Swigart*, 276 F.R.D. 210, 214. The second stage of the collective action analysis occurs once discovery is complete, when "the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiff's claims." *Mullins*, Doc. 30, at PAGEID 1503 (quoting *Swigart*, 276b F.R.D. at 213) (internal quotation marks omitted); *Heibel v. U.S. Bank N.A.*, No. 2:11-cv-00593, 2012 U.S. Dist. LEXIS 139510, *2 9 (S.D. Ohio Sept. 27, 2012).

Given the minimal evidence before the court at the initial notice stage (*Swigart*, 276 F.R.D. at 213), plaintiffs need make only "a modest showing that they are similarly situated to the proposed class of employees" in order to obtain conditional certification. *Lewis*, 789 F. Supp. 2d at 867. This "fairly lenient standard typically result[s] in conditional certification of a representative class." *Mullins*, Doc 30, at PAGEID #1503 (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). This is particularly true where, as here, Plaintiff is seeking conditional certification before <u>any</u> discovery has taken place. *Cox*, 2013 U.S. Dist. LEXIS 78290, *6; *Cf Mullins*, Doc. 30, at PAGEID #1503-1504 (applying a heightened "modest 'plus' factual" standard for conditional certification where the parties agreed to conduct limited discovery directed at conditional certification issues. *Mullins*, Doc. 30, at PAGEID #1504.[15]

---

[15] To the contrary, here the parties have agreed to stay discovery until *after* the Court rules on Plaintiff's FLSA Motion. *See* Doc. 2, at PAGEID #65.

**C.      Plaintiffs Have More Than Satisfied Their Lenient Burden and Notice Should Issue to the ASM Collective.**

Defendant maintains a policy, practice, or plan by which it unlawfully denies overtime compensation to current and former ASMs, regardless of store location, by misclassifying them as exempt in order to reduce labor costs.  *See* Part I.B *supra*. Pursuant to its nationwide policy, practice and plan, Defendant failed to pay overtime compensation to ASMs for hours worked in excess of forty each week.  *Id*. The allegations in the Complaint, combined with the declarations of the seven Plaintiffs and corporately derived documents, demonstrates that Plaintiffs have satisfied their lenient burden of showing that they and Defendant's ASMs are similarly situated for purposes of conditional certification, including that ASMs:

    (a)     are subject to a uniform job description;
    (b)     perform the same primary job duties;
    (c)     do not perform supervisory or managerial tasks;
    (d)     are subject to the same uniform training;
    (e)     are subject to the same uniform policies and procedures;
    (f)     are uniformly paid on a salary basis and eligible for the same bonuses and benefits;
    (g)     are all classified by Defendant as exempt from the overtime provisions of the FLSA;
    (h)     regularly work in excess of forty (40) hours in a workweek;
    (i)     are not paid overtime compensation; and
    (j)     are subject to the same FLSA violation.

*See* Part I.B *supra*. This is precisely the same type of evidence that courts in this District – including this Court – have previously relied upon in granting conditional certification in an FLSA misclassification case where, as here, the plaintiff complained that he and the members of the putative collective were together the victims of a single decision, policy, or plan, namely that the defendant violated the FLSA misclassifying him and similarly situated salaried employees as exempt from overtime for working more than 40 hours in a week in order to reduce labor costs. *See e.g.*, *Mullins*, Doc. 30 (granting conditional certification on the basis of the testimony of

seven Kroger ASMs affidavits); *see also Swigart*, 276 F.R.D. at 213 (granting conditional certification where the plaintiffs submitted evidence showing mortgage loan officers had similar job responsibilities, did not receive overtime pay when they worked more than forty hours per week, and then were reclassified from exempt to non-exempt employees as a group); *Heibel*, 2012 U.S. Dist. LEXIS 139510, *5-6 (same); *Lewis*, 789 F. Supp. 2d at 868 (same); *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 U.S. Dist. LEXIS 181073, *2 (S.D. Ohio, Dec. 21, 2012) (same). *See also Powell*, 2020 U.S. Dist. LEXIS 248526, at *7-8 (granting conditional certification on the basis of the declarations of three assistant store managers and corporate documents); *Waggoner*, 110 F. Supp. 3d 759, 767 (granting conditional certification on the basis of five declarations from the plaintiffs and opt-ins); *Levine*, 2020 U.S. Dist. LEXIS 207945, at *8-9 (granting conditional certification on the basis of the declarations of six assistant store managers); *Cox*, 2013 U.S. Dist. LEXIS78290, *7-8 (granting conditional certification on the basis of seven declarations and documents produced by the defendant); *Wade*, 2012 U.S. Dist. LEXIS 15657, *13 (granting conditional certification on the basis of one declaration and the company's job description). That Plaintiffs and the members of the putative collective may have worked at different locations is of no moment and does not preclude conditional certification. *McNelley v. Aldi, Inc*., No. 1:09-cv-1868, 2009 U.S. Dist. LEXIS 130788, *9-10 (N.D. Ohio Nov. 17, 2009) (granting conditional certification to collective comprising "store managers" and finding that, based on the plaintiff's declarations and the defendant's job description, they have the same job duties and responsibilities regardless of store location).

Accordingly, a collective action, at least for notice purposes, is the most appropriate way to address the legality of Defendant's common policy not to pay overtime to their ASMs.

### D. Merits Issues Are Not Considered at the Notice Stage.

At the first stage of the conditional certification process, the Court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Mullins*, Doc. 30, at PAGEID # 9; *Swigart*, 276 F.R.D. 210, 214. Related to this, Defendant may oppose conditional certification by submitting counter-declarations from current ASMs, sometimes called "happy camper" declarations. However, such evidence is not considered at this stage of the certification process. *See Creely*, 789 F.Supp.2d 819, 839 ("[T]his Court is not swayed by [the defendant's] submission of thirty-five 'happy camper' affidavits .... [T]he Court's function at this stage of conditional certification is not to perform a detailed review of individualized facts from employees hand-picked by [the defendant]. Those questions of the breadth and manageability of the class are left until the second stage analysis....") (internal citations omitted); *see also Myers*, 201 F. Supp. 3d 884, 891-92 (S.D. Ohio 2016) (citation omitted) ("form affidavits 'gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion'"); *Tinsley v. Covenant Care Servs., LLC*, 2016 U.S. Dist. LEXIS 11988, *9 (E.D. Mo. Feb. 2, 2016) (collecting cases for the proposition that "Courts have afforded no weight to 'happy camper' affidavits at the conditional certification phase"); *Avendano v. Averus, Inc*., 2015 U.S. Dist. LEXIS 42223, *7 (D. Colo. Mar. 31, 2015) (collecting cases indicating that courts "generally afford little importance to the so-called 'happy camper'" when ruling on conditional certification).

### III. <u>NOTICE SHOULD BE SENT TO THE ASM COLLECTIVE</u>

To facilitate the notice process and preserve the rights of those who have not yet opted-in, notice should be sent to all members of the ASM Collective. *See* Ex. E (Plaintiffs' proposed "Notice of Lawsuit"). As it did in *Mullins* (Doc. 30, at PAGEID #1508-1510), notice should be

distributed via first class mail and e-mail, and consent forms submitted using multiple methods, including via online submission.  *See* Ex. F (Plaintiffs' proposed "Consent To Join" form). In light of the current COVID-19 pandemic, notice should also be posted in each of Defendant's "Krogers" stores in its Central (Indianapolis), Michigan, Louisville, Dallas, Houston and Mid-Atlantic (Roanoke) divisions. *Mullins*, Doc. 30, at PAGEID # 1510. ASMs should also be permitted sixty (60) days to return their consent form and join this action. *See Mullins*, Doc. 30, at PAGEID # 1510 (approving a 60-day notice and opt-in period and finding it "is withing the Court's standard range").

Defendant should also be ordered to produce the following contact information to Plaintiffs within fourteen (14) days of the Court's order granting Plaintiffs' Motion:

> A list, in Microsoft Excel format, of all persons employed by Defendant as ASMs, including ASLs, at any time since October 8, 2018 to the present in its Central (Indianapolis), Michigan, Louisville, Dallas, Houston and Mid-Atlantic (Roanoke) divisions, including: names, addresses, dates of employment, locations of employment, and work and personal e-mail addresses.

*Mullins*, Doc. 30, at PAGEID # 1511.

In addition, Defendant should be required to post the notice in all of its "Kroger" stores in the Central (Indianapolis), Michigan, Louisville, Dallas, Houston and Mid-Atlantic (Roanoke) divisions, either in a breakroom or other area where similar types of notices are posted (*e.g.*, Title VII, workers' compensation, etc.). *See Mullins*, Doc. 30, at PAGEID # 1510 (permitting notice to be posted in the defendants' stores "in an area that potential opt-in plaintiffs can safely view it").

Further, Plaintiffs should be permitted to re-send the notice at the half-way mark of the opt-in period (*i.e.,* 30 days after the notice was originally distributed) to those members of the ASM Collective who have yet to return a consent form. It is well documented that people often disregard collective action notices and courts routinely permit such "reminders." *See Adams*,

2020 U.S. Dist. LEXIS 90856, *28.[16] This is particularly true where, as here, notice may be delayed or there are other obstacles associated with the current COVID-19 pandemic.

Courts across the country have recognized the impact the pandemic has had on almost every aspect of our daily lives, including workplaces, schools, courts, and generally "life as we know it." *See United States v. Rodriguez*, No. 03 Civ. 00271, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020) ("Covid-19 has paralyzed the entire world. The disease has spread exponentially, shutting down schools, jobs, professional sports seasons, and life as we know it."); *Doe v. Montgomery Cty. Bd. of Educ.,* No. 17 Civ. 03325, 2020 WL 1675956, at *2 (D. Md. Apr. 6, 2020) ("The Court is aware that Covid-19 has disrupted all aspects of law and life."); *Kleiman v. Wright*, No. 18 Civ. 80176, 2020 WL 1472087, at *2 (S.D. Fla. Mar. 26, 2020) ("Indeed, a national emergency has been declared by President Trump, the State of New York has been particularly crippled by the outbreak, and courts and other workforces across the nation are stretched thin.").

Many potential opt-ins are likely working extended hours performing essential duties as employees of the grocery industry to support Americans during the COVID-19 crisis, including ASMs currently employed by Kroger. Indeed, some ASMs may have contracted the virus or have been caring for someone who has.[17] Accordingly, the notice and opt-in process should be flexible in order to ensure that potential opt-ins will not be further prejudiced by the current pandemic.

---

[16] *See* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008); *Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 964 (N.D. Ind. Sept. 16, 2016) ("The notice is just as easily ignored as it is read.").

[17] *See Grocery Stores Report Coronavirus Deaths as Workers Say They Are Not Receiving Adequate                                                                Protection*,

## IV.   CONCLUSION

For the foregoing reasons, the Court should respectfully grant the instant Motion, including the proposed form and manner of distribution of notice, in order to notify ASMs of their right to join this lawsuit.

Dated: October 8, 2021
        Philadelphia, PA

*s/ Jason Conway*
Jason Conway
**CONWAY LEGAL, LLC**
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 278-4782
Fax: (215) 278-4807
jconway@conwaylegalpa.com

Bruce Meizlish (OH Id. No. 0033361)
Deborah Grayson (OH Id. No. 006277)
**MEIZLISH & GRAYSON**
830 Main Street, Suite 999
Cincinnati, Ohio 45202
Phone: (513) 345-4700
Facsimile: (513) 345-4703
brucelaw@fuse.net
drgrayson@fuse.net

***Attorneys for Plaintiff and the Putative ASM Collective***

## CERTIFICATE OF SERVICE

I certify that, on October 8, 2021, I caused a true and correct copy of the aforementioned document to be served on all counsel of record in this matter through operation of the Court's CM/ECF system.

*s/ Jason Conway*
Jason Conway

---

https://www.democracynow.org/2020/4/7/headlines/grocery_stores_report_coronavirus_deaths_as_workers_say_they_are_not_receiving_adequate_protection.