## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **THOMAS SCHELL and CHRISTOPHER RILEY, on behalf of themselves and all others similarly situated,** | : : : : | Case No. 1:21-cv-00103 |
| | : | Judge Michael R. Barrett |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| **THE KROGER COMPANY d/b/a KROGER,** | : : : | |
| **Defendant.** | : | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

### I.      INTRODUCTION

Plaintiffs are current or former Assistant Store Managers ("ASMs") at Kroger stores who allege they were misclassified as exempt employees under the Fair Labor Standards Act ("FLSA") because they perform clerical tasks like working the cash register and stocking shelves instead of the management functions Kroger hired them to perform. They now seek to certify a collective of all other ASMs working in the <u>nearly 700 stores</u> in Kroger's Central (Indianapolis), Michigan, Louisville, Dallas, Houston, and Mid-Atlantic (Roanoke) divisions for the last three years. Plaintiffs' Motion, however, fails for the simple reason that they have not and cannot satisfy their burden of identifying a single FLSA-violating policy that binds together their proposed collective.

Plaintiffs' Motion relies primarily on their allegation that they are subject to common Kroger materials, including a common job description. This argument is fundamentally flawed for several reasons. First, neither Plaintiffs nor the declarants on which they rely offer any evidence

1

beyond their own unsupported conclusory assertions that this is even true. Even assuming *arguendo* that Plaintiffs were subject to the same or similar job descriptions, Plaintiffs' request to conditionally certify the collective still fails because the crux of their claim is that they ***do not actually perform*** the duties in the job description, which clearly describes an exempt position. As courts across the country have recognized, under these circumstances a common job description describing an exempt position cannot be the the tie that binds an FLSA collective.

Furthermore, Plaintiffs' Motion fails for the additional reason that they have not set forth <u>any evidence</u> based on personal knowledge even suggesting that ASMs at the 700 other stores they seek to bring into this lawsuit perform clerical tasks instead of the managerial duties in their position description. Indeed, they offer no evidence at all concerning the policies or practices in two of the divisions for which they seek conditional certification (other than job postings which describe exempt work). Moreover, Plaintiffs' implication that Kroger previously agreed that the members of this putative collective action are similarly situated to each other is plainly inaccurate and directly contrary to the parties' previous filings in this case.

Finally, the two-step conditional certification procedure upon which Plaintiffs' Motion rests is currently under review by the Sixth Circuit, and the Court should therefore defer ruling on Plaintiffs' Motion until the Sixth Circuit decides the propriety of this standard.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The ASM Job Description Defines an Exempt Executive/Administrative Role.

Generally speaking, the position description(s) that Kroger maintains for the ASM role define the role as follows:

> Responsible for assisting with the overall day-to-day operations of the store including continuous development of effective store associates to achieve desired sales and profit results. Assess daily the stores' ability to meet/exceed customer

expectations for ease of shopping, variety, freshness, cleanliness, food safety and regulatory compliance. Assist with coaching and development of store associates through both formal and informal interactions. Role model and demonstrate the company's core values of respect, honesty, integrity, diversity, inclusion and safety of others.

Ex. 1.[1] The position description states ASMs are responsible for managerial and administrative functions in the stores that they manage, including but not limited to assisting in the hiring, onboarding, and development of associates; reducing associate turnover; providing feedback to department leaders and associates on department and individual performance; assisting in the management of labor and supply costs to meet customer service and financial targets; ensuring compliance with laws and regulations; working with department leaders to maximize sales and reduce shrink; and building a relationship with union representatives. *Id.* Before performing these duties, ASMs must successfully complete Kroger's extensive, 12-week management training program. *Id.*; *see also* Plaintiffs' Declarations at ¶ 2.[2]

There is no question the ASM position, as defined by Kroger, falls within the scope of the FLSA's executive exemption. *See* 29 C.F.R. § 541.100(a)(1)-(4). As demonstrated by the position description, Kroger hires ASMs to perform multiple activities that the Department of Labor ("DOL") expressly defines as "management," including but not limited to interviewing, selecting, and training employees; directing the work of employees; planning work; and monitoring or implementing legal compliance measures. *See* 29 C.F.R. § 541.102. ASMs also have hiring and firing authority and regularly direct the work of two or more other employees.

---

[1] The current position description for the Central division is attached as an example for the Court's reference.

[2] "Plaintiffs' Declarations" refers collectively to the boilerplate declarations of Thomas Schell (Dkt. 44-8), Christopher Riley (Dkt. 44-9), Olivia Strehle (Dkt. 44-10), Ronnie Banks, Jr. (Dkt. 44-11), Sharif Albarkat (Dkt. 44-12), Jonathan Holmes (Dkt. 44-13), and Rashad Myers (Dkt. 44-14).

There is similarly no question that the ASM position, on its face, falls within the scope of the administrative exemption. *See* 29 C.F.R. § 541.200(a)(1)-(3). Kroger hires ASMs to perform multiple tasks the DOL has expressly clarified are "directly related to . . . management or general business operations," like quality control, personnel management, human resources, and legal and regulatory compliance. *See* 29 C.F.R. § 541.201(b). Further, these tasks require the use of discretion. *See*, *e.g.*, 29 C.F.R. § 541.203(e) (human resource managers who make hiring decisions or recommendations are exempt administrative employees); *Bradford v. CVS Pharm., Inc.*, 2016 U.S. Dist. LEXIS 150968, ** 6-20 (N.D. Ga. Oct. 27, 2016) (retail employee responsible for investigating and preventing shrink administratively exempt); *Cornejo v. SY Food, Inc.*, 2009 U.S. Dist. LEXIS 133788, ** 6-22 (S.D. Tex. Apr. 6, 2009) (Produce manager responsible for ordering and maintaining proper inventory, department profitability, supervising an employee, and ensuring quality of income shipments was administratively exempt).

## B. Procedural History

On February 11, 2021, Plaintiffs commenced this lawsuit. Dkt. 1. The Complaint alleges Kroger misclassifies ASMs as exempt because they do not perform the management functions Kroger hired them to perform and instead "spend the vast majority of their time performing the same duties as non-exempt employees, including helping customers, working the cash register, moving products, stocking shelves, setting and resetting displays, counting inventory, cleaning the store, and otherwise standing in as cashiers, stockers, or other hourly workers." *Id*. at ¶ 3. Plaintiffs purport to bring their FLSA claims on behalf of "all persons who are or were formerly employed by Defendant in the United States during the relevant time period as ASMs, and individuals holding comparable salaried positions with different titles ("ASM Collective")." *Id*. at ¶ 6.

In May 2021, the parties mediated this case (along with several other related cases, also filed by Plaintiffs' counsel, that similarly challenge the exempt status of ASM level positions at several Kroger affiliates). In order to facilitate meaningful settlement negotiations, the parties required information about the number of plaintiffs who would opt-in. Accordingly, the parties stipulated to conditionally certifying some, but not all, of the "ASM Collective" (specifically, ASMs in Kroger's Atlanta, Columbus, Cincinnati, Memphis (Delta), and Nashville divisions) to gain information about the opt-in rate. *See* Dkt. 15. Kroger never agreed that Plaintiffs were similarly situated or that certification was appropriate for any reason other than to facilitate settlement discussions. To the contrary, the parties' stipulation expressly states:

> Defendant is not waiving any rights or defenses by virtue of this stipulation. Defendant expressly preserves all rights and defenses, including but not limited to, seeking to decertify the conditional collective action, objecting to the proposed final collective action certification, and objecting to the proposed collective action as not meeting the requirements of section 16(b) of the Fair Labor Standards Act and/or any other legal and/or factual basis.

Dkt. 15 at 2.

On October 8, 2021, Plaintiffs filed the instant Motion for Conditional Certification ("Motion," Dkt. 44, 44-1).[3] The Motion asks the Court to certify the following collective:

> All current and former "Assistant Store Managers" who work(ed) for Kroger in its Central (Indianapolis), Michigan, Louisville, Dallas, Houston and Mid-Atlantic (Roanoke) divisions at any time on or after October 8, 2018 to the present, and who were classified as exempt from overtime compensation[.]

Motion at 4.

---

[3] Citations to "Motion" refer to Dkt. 44-1.

### III. ARGUMENT

#### A. Standard

The FLSA authorizes employees to pursue claims collectively against an employer "on behalf of [her]self or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To obtain collective treatment of their claims, however, a plaintiff bears the burden of demonstrating that they and all members of the collective they seek to represent are "similarly situated." *White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). The similarities necessary to maintain a collective action must extend "beyond the mere facts of job duties and pay provisions." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1262 (11th Cir. 2008). In other words, plaintiffs must establish not just that they "suffer from a single policy" but also that "proof of that policy or conduct in conformity with that policy proves a violation as to all the plaintiffs." *See Gentrup v. Renovo Servs., LLC*, 2010 U.S. Dist. LEXIS 143203, ** 23-24 (S.D. Ohio Aug. 17, 2010) (citing *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567 (6th Cir. 2009)).

District courts within the Sixth Circuit have historically followed a two-stage approach; at the first stage, a plaintiff seeking conditional certification must make a "modest factual showing" that she is similarly situated to the putative class members. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006). The Sixth Circuit has not expressly adopted this two-stage framework (though it has acknowledged district courts have used it). *See Holder v. A&L Home Care & Training Ctr.*, 2021 U.S. Dist. LEXIS 145586, * 15 (S.D. Ohio Aug. 4, 2021). While the evidentiary threshold at the first stage is not particularly high, it also is not illusory; rather, a plaintiff must demonstrate "a factual nexus—that is, something more than mere allegations—to warrant conditional certification and the delivery of notice to potential class members." *Anderson v. McCarthy, Burgess & Wolff, Inc.*, 2015 U.S. Dist. LEXIS 5198, ** 6-7 (N.D. Ohio Jan. 15,

2015). Courts as well as practicing attorneys "have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002). Particularly at this early stage, judicial scrutiny of a purported collective action serves an important purpose: "It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only later to determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

Conditional certification should be denied where there is a lack of evidence to support a class-wide claim. *See, e.g., Landsberg v. Acton Enters., Inc.*, 2006 U.S. Dist. LEXIS 90716, at ** 13-14 (S.D. Ohio Dec. 15, 2006) (affidavits of plaintiff and one other employee based on hearsay insufficient to warrant conditional certification). The court should disregard any allegations that are not based on personal knowledge in inquiring whether the plaintiff and the absent potential collective members are similarly situated. *See Matthews v. ALC Ptnr., Inc.*, 2009 U.S. Dist. LEXIS 75097, * 12 (E.D. Mich. Aug. 24, 2009).

**B.      Plaintiffs Have Not Identified a Single, FLSA-Violating Policy Applicable to all Members of the Collective.**

Plaintiffs' Motion fails for the simple reason that Plaintiffs have not, and cannot, identify a single FLSA-violating policy that is common to all members of the proposed collective. *See Gentrup*, 2010 U.S. Dist. LEXIS 143203, ** 23-24.

First, Plaintiffs claim all Kroger ASMs are subject to the same corporate policies and materials, including a similar ASM position description, similar training materials, and a similar performance review process. *See* Motion at 6, 8-9. Plaintiffs, however, do not actually provide any evidence – beyond their unsupported conclusory assertions – to support this proposition. Plaintiffs do not even attach an official job description. Plaintiff Declarants claim ASMs receive

the same training materials (Plaintiffs' Declarations at ¶ 2) but nothing in their declarations demonstrates they have personal knowledge about how Kroger trains ASMs at all of its other stores. Plaintiffs likewise do not set forth any basis to establish personal knowledge for the assertion that the "generic training materials" attached as Exhibit B to Plaintiffs' Declarations are distributed universally; Plaintiffs' Declarants merely state their own training was "largely based"—whatever that means—on the categories in these materials. *Id.* Finally, Plaintiffs do not set forth any actual evidence of a uniform performance review process. Plaintiffs' Declarants merely state they were reviewed on forms that were "the same, or equivalent" as performance reviews for one ASM in each of Kroger's Cincinnati and Delta divisions (divisions that are not even at issue for purposes of this motion). Plaintiffs' Declarations at ¶ 15; *id.* at Ex. D.

Even if true, however, this argument is fundamentally flawed because the materials upon which Plaintiffs rely demonstrate the ASM position is properly ***exempt***. The position description lists exempt duties. *See* Section II(A), *supra*. The training materials to which Plaintiffs cite demonstrate ASMs are trained to perform exempt duties. *See*, Dkt. 44-3 at 5 (Leadership Model, "coaches and develops others," "leads through positive influence," "plans and organizes well," "reviews progress, acts decisively, solves problems"). The performance evaluations demonstrate ASMs are evaluated on their performance of exempt duties. *See* Dkt. 44-5 at 3 (ASM performance evaluation, Store Manager's comments: "She handles and manages all people and tasks that are asked of her. She does a great job of managing and getting work done thru her people which is a sign of a true leader."); *Id.* at 11 (ASM performance review demonstrating ASM is reviewed on ability to "coach[] and develop[] others").

Kroger materials that demonstrate ASMs perform, and are evaluated on their performance of, exempt duties do **not** demonstrate the existence of a companywide policy that violates the FLSA. *See Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 801 (S.D.N.Y. Jan. 13, 2012) ("Obviously, [plaintiff ASM] pointing to a common policy at [defendant] regarding the job duties of ASMs provides no proof that other ASMs are performing non-exempt duties, particularly given that all policies and writings from [defendant] dictate just the opposite."); *Tyler v. Taco Bell Corp.*, 2016 U.S. Dist. LEXIS 58549, ** 12-13 (W.D. Tenn. May 3, 2016) ("[Defendant's] job description, training materials, corporate policies, and compensation method for AGMs do not support conditional certification because these policies facially comply with the FLSA.").

Of course, Plaintiffs claim they did not perform these duties. That leads to another defect in Plaintiffs' Motion: They cannot rely on corporate materials to demonstrate they are "similarly situated" while at the same time claiming they do not perform the duties in those policies or materials. *See Mike v. Safeco*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (common job description insufficient for conditional certification because "[plaintiff] does not rely on [defendant's] job description as evidence in support of his claim; in fact, [plaintiff] expressly disavows this job description and claims that, on a task-to-task, day-to-day basis, he spent the balance of his time performing non-administrative functions despite the fact that his job called for him to perform some administrative functions").

Second, Plaintiffs allege ASMs perform the same duties. Motion at 5. This argument also fails. The only evidence on this issue is a handful of declarations from current or former ASMs who claim they spent at least 80% of their time performing hourly duties like working the cash register and stocking shelves. *See* Plaintiffs' Declarations at ¶ 13. None of Plaintiffs' declarants

provide any evidentiary basis to establish they have personal knowledge that other ASMs in other stores and divisions spend their time stocking shelves.

To the contrary, Kroger relies on ASMs to perform the managerial duties in their position description and they, in fact, perform them. *See* Declaration of Lawrence Dean ("Dean Dec.," Ex. 2); Declaration of Cynthia Henry ("Henry Dec.," Ex. 3). <u>Nothing</u> in Plaintiffs' Motion or supporting materials provides any basis to infer that other ASMs perform hourly duties often (like Plaintiffs claim to) as opposed to rarely (as Dean and Henry—ASMs at two of the divisions Plaintiffs seek to bring into this lawsuit—do).[4] Plaintiffs' (and their declarants') boilerplate assertion that "[b]ased on my experience at Kroger and conversations with other managers, ASMs work more than 40 hours per week, perform similar duties, and are required to comply with the same policies and procedures" fails because "[c]onclusory allegations in a plaintiff's declaration . . . fail to support conditional certification." *Marlow v. Mid-South Maint. Of Tenn., LLC*, 2021 U.S. Dist. LEXIS 48614, * 17 (E.D. Tenn. Mar. 16, 2021). Further, these allegations fail to demonstrate that <u>any</u> Plaintiff or declarant has personal knowledge of which duties ASMs at the other approximately 700 stores at issue here perform.[5] *See O'Neal v. Emery Fed. Credit Union*, 2013 U.S. Dist. LEXIS 110383, * 24 (S.D. Ohio Aug. 6, 2013) ("[T]o warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an

---

[4] See Dean Dec. at ¶ 18; Henry Dec. at ¶ 12. Kroger is aware that in the "lenient" first step of the conditional certification analysis—the propriety of which Kroger disputes, see Section III(D), *infra*—courts usually do not weigh competing evidence. Kroger does not submit these declarations as evidence of <u>its</u> position, but to provide context for its argument that Plaintiffs have not demonstrated, through personal knowledge, the existence of a company-wide policy requiring ASMs to forego the managerial duties listed in their job description.

[5] The only thing the declarants say about ASMs in other stores is that they are subject to the ASM job description, which, again, lists exempt duties.

inference that she has *actual knowledge* about other employees job duties[.]"). Plaintiffs have not submitted any evidence, at all, that ASMs in Kroger's Mid-Atlantic or Houston divisions do not perform their required managerial and/or administrative duties.[6]

Third, Plaintiffs claim ASMs are "similarly situated" because they are classified as exempt, paid a salary, and not paid overtime. Motion at 6-8. This argument fails because "it is not enough, even at the notice stage, to allege lead and opt-in plaintiffs are similarly situated simply because of the defendant's common scheme to misclassify them as exempt." *Shipes v. Amurcon Corp.*, 2012 U.S. Dist. LEXIS 39794, * 23 (E.D. Mich. Mar. 23, 2012).

### C. Kroger's Prior Acquiescence to a Limited Collective of ASMs During Mediation is Irrelevant.

Plaintiffs argue "Kroger recently conceded that [conditional certification] is appropriate, and agreed to stipulate to conditional certification of the FLSA claims of ASMs who worked at approximately 500 'Kroger' branded stores spanning [the Atlanta, Columbus, Cincinnati, Memphis (Delta) and Nashville] divisions." Motion at 2.

This argument is inaccurate and irrelevant. During mediation, the parties agreed they needed information about the opt-in rate to facilitate settlement discussions, which were ongoing from May 2021 until September 2021. *See* Dkt., 5/13/2021 Notation Order (referencing the parties' ongoing mediation efforts). To that end, they jointly agreed to conditionally certify a limited class of some ASMs at issue in this lawsuit. Dkt. 14, 15. The joint stipulation <u>does not</u> agree that Plaintiffs are "similarly situated." And Kroger expressly stated that it "is not waiving any rights or defenses by virtue of this stipulation" and that it "expressly preserves all rights and

---

[6] Plaintiffs claim they will soon submit additional declarations from opt-ins in these divisions. Motion at 6, n. 10. The Court should disregard this statement, and any forthcoming evidence, entirely. This Court's local rules require a party to submit all available evidence along with its "primary memorandum." S.D. Ohio Civ. R. 7.2(d).

defenses," including "objecting to the proposed collective action as not meeting the requirements of section 16(b) of the Fair Labor Standards Act and/or any other legal and/or factual basis." Dkt. 15 at 2. The fact that Kroger <u>temporarily</u> agreed to conditionally certify a <u>limited</u> collective of ASMs in an attempt to settle multiple lawsuits (and while reserving all of its rights) does not amount to a "concession" that its ASMs are similarly situated. Plaintiffs' argument to the contrary misstates this Court's May 19, 2021, Order (Dkt. 15) and violates Federal Rule of Evidence 408.

> **D.**     **At a Minimum, this Court Should Defer Ruling on Plaintiffs' Motion until the Sixth Circuit Resolves the Propriety of the "Two-Stage" FLSA Certification Process.**

>> 1.     <u>A challenge to the propriety of the "two-stage" FLSA certification process is currently pending before the Sixth Circuit.</u>

Several courts have recently questioned the propriety of the two-step approach to FLSA certification, including the "lenient" first-stage burden on which Plaintiffs rely. Many authorities, including courts in this judicial district, point to *Mooney v. Aramco*, 54 F.3d 1207 (5th Cir. 1995), as the source for the two-tiered approach. *See, e.g.*, *Waters v. Pizza for You, LLC*, 2020 U.S. Dist. LEXIS 39913 (S.D. Ohio March 9, 2020). However, the Fifth Circuit has recently overturned *Mooney*, rejecting the ongoing viability of the two-tiered approach to FLSA collective action claims, instead holding that the court should determine whether the merits questions can be answered collectively *before* notice is sent out:

> In our view, a district court must rigorously scrutinize the realm of 'similarly situated' workers and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.' Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs.

*Swales v. KLLM Transp. Servs., L.L.C.*, No. 19-60847, 2021 WL 98229, at * 2 (5th Cir. Jan. 12, 2021).

Following the Fifth Circuit's decision in *Swales*, another Court in this district recently questioned the applicability of the two-step certification process and certified the question for interlocutory appeal to the Sixth Circuit Court of Appeals. *See Holder v. A&L Home Care & Training Ctr.*, 2021 U.S. Dist. LEXIS 145586, ** 28-29 (S.D. Ohio Apr. 4, 2021) (J. McFarland). The *Holder* Court relied on the absence of any Sixth Circuit authority requiring the common two-step approach , as well as the Fifth Circuit's holding in *Swales*, to determine that immediate appeal was necessary to resolve the question of whether the two-step process is appropriate:

> Neither party has shown, and this Court has not found, any Sixth Circuit authority *requiring* courts to certify FLSA collective actions in two stages. Bound up with bifurcated certification is the slight evidentiary showing required at the conditional certification step. While we have a "checklist," of sorts, when it comes to decertification, *Monroe v. FTS USA, LLC*, 860 F.3d 389, 416 (6th Cir. 2017) (quoting *O'Brien*, 575 F.3d at 584) (Sutton, J., concurring in part and dissenting in part), the facts at the conditional certification stage need only be "modest" and the courts are "lenient." *Harrison*, 411 F. Supp. 2d at 865. In practice, then, bifurcated certification carries with it a bifurcated evidentiary standard. This, even though the "similarly situated" standard ostensibly applies at both stages. 29 U.S.C. § 216(b). A lenient review of the parties' evidence for conditional certification can be in tension with the requirement that the employees who are to receive notice be "*in fact*, 'similarly situated.'" *Comer*, 454 F.3d at 546 (emphasis added). Indeed, the district courts in our circuit have different ways of striking the balance. *See, e.g.*, *Harrison*, 411 F. Supp. 2d at 865.
>
> The Fifth Circuit, on the other hand, in dispensing with step-one conditional certification held that district courts must "rigorously scrutinize the realm of 'similarly situated' workers" at the beginning of the case. *Swales*, 985 F.3d at 434. That way, the court reasoned, notice only goes to people who are "actually similar" to the named plaintiffs. *Id.* Otherwise, a too-lenient approach can result in sending notice to employees who are not potential plaintiffs—which risks crossing the line from managing the case to soliciting claims, something *Hoffmann La-Roche* forbids. *Id.* at 442.
>
> In light of the issues Defendants raise, the Court certifies this Order for immediate interlocutory appeal under 28 U.S.C. § 1292(b).

*Id.* The defendant in *Holder* filed a request for leave to appeal in the Sixth Circuit; briefing, including *amicus* briefing, is underway. *See In re: A&L Home Care and Training Ctr., et al.*, Sixth Circuit No. 21-305 (docket attached as Exhibit 4).

2.   Kroger Will Likely Succeed in Decertifying This Case.

The Sixth Circuit's imminent decision on the appropriate conditional certification framework is particularly important here because Kroger will almost certainly succeed in decertifying this case under <u>any analysis</u> more stringent than the typical "lenient" stage-one review (though Kroger submits Plaintiff has not met that standard, either).

Recently, in *Haugen v. Roundy's Illinois, LLC d/b/a Mariano's*,[7] the Northern District of Illinois decertified a FLSA collective action on similar facts and evidence. *See* 2021 U.S. Dist. LEXIS 146896 (N.D. Ill. Aug. 5, 2021). There, Plaintiffs were "People Service Managers" ("PSMs") at Mariano's grocery stores in the Chicago area. *Id.* at ** 1-2. PSMs are a subset of ASMs: they are managers who are exclusively responsible for HR functions including recruiting and hiring, handling employee complaints and grievances, safeguarding employee morale, and ensuring that employees have completed necessary certification and training. *Id.* at * 2. The only material difference between Mariano's PSMs and Kroger ASMs is Mariano's PSMs are only responsible for HR duties, whereas Kroger's ASMs are responsible for those HR duties in addition to a wider variety of exempt duties required to manage the rest of the store.

<u>Just like Plaintiffs here</u>, the *Haugen* plaintiffs claimed they were misclassified as exempt because, regardless of their job description, they "performed significant hours of non-exempt manual labor and other non-exempt duties typically performed by hourly store associate employees, such as operating the cash registers, bagging groceries, stocking shelves," etc. *Id.* at *

---

[7] Mariano's is a Kroger affiliate that operates grocery stores in the Chicago area.

5. The Court granted Mariano's motion to decertify, in part, because of disparate evidence on the issue of how much time Plaintiffs spent on their PSM-duties vis-à-vis hourly duties like bagging:

> Deposition evidence, however, reveals significant differences in the degree to which plaintiffs were required to perform non-PSM tasks. Opt-in Plaintiff Ignoffo, for example, testified that he spent a significant portion of his time performing non-PSM "front end" tasks—approximately 50% of his workday on normal weekdays and up to 70% on holidays and weekends. . . . Opt-In Plaintiff Garcia, in contrast, did not testify to performing any "front end" duties at all. . . . The other plaintiffs fell somewhere in the middle. . . . Accordingly, the evidence suggests that there is no uniform, common policy governing the extent to which PSMs are called away from their normal duties to perform front-end functions. Instead, the practice seems to vary greatly by store and by supervisor.

*Id.* at 5-6. The Court found decertification appropriate for the additional reason that, given the disparate testimony on how each PSM spends their time, Mariano's administrative-exemption defense was not capable of resolution on a collective basis:

> As noted above, application of the administrative exemption "requires a thorough, fact-intensive analysis," *Schaefer-LaRose*, 679 F.3d at 572, including into the question of the employee's "primary duty." 29 C.F.R. 541.200(a)(2)-(3). . . . Here, the evidence suggests that PSMs varied significantly in time spent performing different functions of their jobs. Accordingly, the "primary duty" analysis would likely require an individualized inquiry. Mr. Ignoffo, for example, who testified that he spent more than half of his time on non-PSM front-end duties, . . . may have a different "primary duty" than Ms. Garcia, who does not have any front-end responsibilities at all[.]

*Id.* at 9-10.

Here, if Plaintiffs (and their declarants) are to be believed, then the day-to-day duties of Kroger ASMs vary even more widely than the Mariano's PSMs. This is unsurprising given that ASMs manage the entire store (as opposed to just the HR function) and accordingly perform a wider variety of exempt managerial and administrative duties. For example, Olivia Strehle claims that, when she was an ASM in Kroger's Louisville division, her "primary duties included serving customers, ringing customers up on the cash register, stocking shelves, unloading trucks, moving merchandise, counting inventory, and cleaning the store." Dkt. 44-10 at ¶ 13. Strehle claims she

spent 80-90% of her time performing these duties (*id.*); that her primary duties do not involve management of other employees, nor hiring, firing, disciplining, promoting, or setting their rates of pay; and that her Store Manager was responsible for making personnel decisions. *Id.* at ¶ 15.

In contrast, Cynthia Henry—also an ASM in Kroger's Louisville division—only performs hourly tasks like bagging groceries, stocking, or cashiering on an as-needed basis and for fewer than five hours per week. Henry Dec. at ¶ 12. She is always managing—even when occasionally bagging groceries—and will stop performing this work to deal with managerial issues that may arise. *Id.* She has authority to (and has) hired and fired associates. *Id.* at ¶¶ 9-10. She performs a number of managerial functions that Strehle, apparently, does not: Henry is in charge of food safety and implements changes as needed after food safety audits (*id.* at ¶ 3); edits the budget based on her independent judgment and consideration of local events that may affect demand and sales trends (*id.* at ¶ 6); and coaches department heads on how to improve in ordering an accurate level of inventory (*id.* at ¶ 5). She is in charge when the Store Manager is not in the store, which occurs most days she works. *Id.* at ¶ 11. During these times she makes managerial decisions for the store—like whether to close departments due to staff shortage—and solves problems. *Id.* at ¶ 11.

Plaintiffs' declarant Ronnie Banks, Jr., worked as an ASM in Kroger's Indianapolis division. Dkt. 44-11 at ¶ 3. According to Banks, his primary duties included serving customers, retrieving carts from the parking lot, stocking shelves, unloading trucks, moving merchandise, counting inventory, and cleaning the store. *Id.* at ¶ 13. He claims he spent 80% of his time performing these duties; that his primary duties did not include managing other employees nor hiring, firing, disciplining, promoting, or setting their rates of pay; and that his Store Manager was responsible for making personnel decisions. *Id.* at ¶¶ 13, 15.

In contrast, Lawrence Dean—also an ASM in Kroger's Indianapolis division—"rarely" performs non-managerial tasks. Dean Dec. at ¶ 18. He bags groceries approximately 5 hours of the more than 50 he works per week, and usually as a tool for observing the work of front-end associates. *Id.* Dean usually does not stock shelves. *Id.* Dean spends his time performing managerial duties Banks, allegedly, does not: he manages the entire store when the Store Manager is not present (*id.* at ¶ 3); leads team huddles and coaches associates (*id.* at ¶¶ 7-8); has authority to hire and fire associates (*id.* at ¶¶ 13, 15); and analyzes reports and discusses them with department heads (*id.* at ¶ 11).

As the *Haugen* decision recognizes, the claims of these employees cannot be resolved on a collective basis. If Strehle and Banks are being truthful about the amount of time they spend performing hourly work, then they do not have the same "primary duties" as Dean and Henry, who only occasionally perform that work (and manage while doing it). Kroger's executive and administrative exemption defenses cannot be resolved collectively because Dean and Henry manage associates, have hiring and firing authority, and perform administrative duties that require discretion while Strehle and Banks claim they do not.

        3.      <ins>Given the strength of Kroger's decertification arguments, the Court should defer ruling on Plaintiffs' Motion.</ins>

Kroger requests that the Court deny Plaintiffs' Motion. In the alternative, Kroger requests that the Court hold Plaintiffs' Motion in abeyance until the Sixth Circuit issues a dispositive ruling in *Holder*. Kroger respectfully submits it should not be required to send notice to employees under a "lenient" step in a two-step framework that is currently being challenged at the Sixth Circuit Court of Appeals. This is particularly true because, as set forth above, Kroger will likely succeed in decertifying the collective under any analysis that considers its evidence and/or defenses.

**E.     Even if the Court Grants Plaintiffs' Motion, Notice Should Be Limited to Two Years from the Date of the Court's Order.**

Plaintiffs request that the Court send notice to all current and former ASMs who, *inter alia*, worked for Kroger "at any time on or after October 8, 2018 to the present." Motion at 4. In other words, Plaintiffs ask the Court to authorize notice to employees who worked for Kroger for three years prior to the date Plaintiffs filed their motion for conditional certification (October 8, 2021). Plaintiffs' request fails for two reasons. First, the Court should only authorize notice for a two-year period. The FLSA provides for a two-year statute of limitations. 29 U.S.C. § 255(a). The statute of limitations is only extended to three years for claims "arising out of a willful violation." *Id.* An FLSA violation is "willful" if the employer knew or showed reckless disregard as to whether its conduct was unlawful. *Holder*, 2021 U.S. Dist. LEXIS 145586, * 17. To prove willfulness, a plaintiff needs to set forth evidence that the defendant either acted with knowledge that a federal statute prohibited its conduct or acted with reckless disregard as to a federal law's requirements. *Id.* at * 18. Conclusory allegations of "willfulness" do not entitle a plaintiff to a three-year notice period. *Id.* Allegations of willfulness must be "stronger than mere claims that a defendant 'knew or had reason to know' of its alleged FLSA violations," *id.* at ** 17-18, which is all Plaintiffs offer here. *See* Complaint at ¶ 67. The two-year statute of limitations applies to Plaintiffs' claim. 29 U.S.C. § 255(a). Accordingly, notice should extend back two years. *Holder*, 2021 U.S. Dist. LEXIS 145586, ** 18-19.

Second, that two-year period should not be measured by the date Plaintiffs filed the instant Motion, but by the date (if any) of the Court's order authorizing notice. *See Crescenzo v. O-Tex Pumping, LLC*, 2016 U.S. Dist. LEXIS 78012, * 15 (S.D. Ohio June 15, 2016) (notice period is measured by "the date of approval of the notice"). In a collective action, the named plaintiff's claim is deemed filed on the date he files the complaint so long as she also files a written consent

to join, but an individual not named in the complaint is not deemed to have filed a complaint until the date she opts-in as a party plaintiff. 29 U.S.C. § 256(a), (b). Accordingly, even claims of employees who worked at Kroger as of October 8, 2019 (two years before the Motion) are barred by the statute of limitations if they left more than two years before opting-in to this lawsuit. *Id.* To ensure employees whose claims are time-barred do not receive notice, the Court should limit the notice period to "two years prior to the Court's decision granting conditional certification and authorizing notice" (if any). *See Atkinson v. TeleTech Holdings, Inc.*, 2015 U.S. Dist. LEXIS 23630, \*\* 7-8 (S.D. Ohio Feb. 26, 2015) (explaining that measuring notice period by date of order granting certification will "ensure that notice of the collective action is not sent to former employees whose statutes of limitations may have already expired").

### F. If the Court Conditionally Certifies the Collective Action, Notice Should be Distributed Once by Regular Mail Only.

Even if the Court grants Plaintiffs' Motion, Plaintiffs' proposed notice is not proper. First, Plaintiffs seek to send notice to the putative collective members by U.S. Mail and e-mail. Motion at 17-18. This is improper. Courts generally approve only a single method for notification unless there is a reason to believe that method is ineffective. *See Wolfram v. PHH Corp*, 2012 U.S. Dist. LEXIS 181073, \* 11 (S.D. Ohio 2012); *Fenley v. Wood Grp. Mustang, Inc.*, 2016 U.S. Dist. LEXIS 346043, \*\* 20-21 (S.D. Ohio 2016); *Lemmon v. Harry & David Operations, Inc.*, 2016 U.S. Dist. LEXIS 11810, \* 19 (S.D. Ohio 2016). Plaintiffs do not even argue notice by U.S. Mail would be ineffective; their repeated and generic references to the COVID-19 pandemic do not suggest any Kroger employee is incapable of checking their mail. The Court should order notice by U.S. Mail only (if at all). At a minimum, this Court should not allow Plaintiffs to send notice to employees' personal and work e-mails, as this would amount to three forms of notice.

Next, the Court should reject Plaintiffs' request that Kroger be required to post notice, which is nothing more than an attempt to disrupt operations in 700 Kroger stores. Defendants are typically not required to post notice in this district. *See, e.g.*, *Lutz v. Huntington Bancshares, Inc.*, 2013 U.S. Dist. LEXIS 56477, ** 21-22 (S.D. Ohio 2013). Plaintiffs offer no legitimate reason as to why posted notice is necessary in this case.

Finally, the Court should reject Plaintiffs' request to send reminder notices. Reminder notices are improper and unwarranted because they "may unnecessarily stir up litigation or improperly suggest the Court's endorsement of Plaintiff's claims." *Fenley*, 2016 U.S. Dist. LEXIS 34603, ** 22-23 (S.D. Ohio 2016). Again, the fact that Kroger and its employees are working during a pandemic is irrelevant; Plaintiffs have not alleged (much less proven) that they are incapable of getting the mail.

### G. The Court Should Deny Plaintiffs' Request for Expedited Discovery.

Plaintiffs request that the Court order Kroger to provide a list, in excel format, of all persons employed as ASMs at <u>any Kroger store in the United States</u> on or after October 8, 2018, to the present, including names, addresses, dates of employment, locations of employment, and work and personal e-mail addresses <u>within seven days of an Order granting conditional certification</u>. Respectfully, this is unreasonable. Kroger is the largest supermarket chain in the United States, operating in the middle of a global pandemic (that Plaintiffs reference twice in their Motion), and short-staffed due to a nationwide labor shortage. Kroger should have at least 30 days—the same time it would be allowed to respond to an interrogatory or a document request under the Federal Rules of Civil Procedure—to compile this burdensome information and produce it in the format Plaintiffs request.

Further, Kroger should not have to produce employee phone numbers at all. Plaintiffs have not asked (and are not entitled) to send notice via text. Plaintiffs do not need this information.

## IV. CONCLUSION

For all the foregoing reasons, Kroger respectfully requests the Court deny Plaintiffs' Motion for Conditional Certification.

/s/ David K. Montgomery
David K. Montgomery (0040276)
Jamie Goetz-Anderson (0083562)
Jeremy D. Smith (0088539)
JACKSON LEWIS P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, Ohio 45202
Telephone (513) 898-0050
Fax: (513) 898-0051
Email: David.Montgomery@jacksonlewis.com
Email: Jamie.Goetz-Anderson@jacksonlewis.com
Email: Jeremy.Smith@jacksonlewis.com

*Attorneys for Defendant*
*The Kroger Company d/b/a Kroger*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed via the Court's CM/ECF system, which will send notification to all counsel of record on this 29 day of October, 2021.

/s/ David K. Montgomery
David K. Montgomery

4854-1985-7921, v. 1